# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**SHARIKA M. WASHINGTON,**

        **Plaintiff,**

**vs.**                          **Case No.**

**ROBINHOOD MARKETS, INC.,**

        **Defendant.**

_____ **/**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SHARIKA M. WASHINGTON, files this complaint against Defendant, ROBINHOOD MARKETS, INC., and alleges as follows:

## INTRODUCTION

1. This action is brought pursuant to redress violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; and the Florida Civil Rights Act of 1992 ("FCRA").

## JURISDICTION AND VENUE

2. Plaintiff has exhausted relevant administrative remedies under the FCRA and Title VII by filing charges of discrimination and participating in investigations conducted by the FCHR and EEOC.

3.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 & 1367.

4.     The violations alleged herein occurred within the Tampa Division of the
Middle District of Florida.

## PARTIES

5.     Plaintiff is a resident and citizen of Pasco County, Florida.

6.     Defendant employed Plaintiff in Pasco County, Florida.

7.     At all times relevant, Defendant is a covered employer under Section 1981,
Title VII and FCRA.

## FACTUAL BACKGROUND

8.     Plaintiff is an executive-level highly educated African-American female.

9.     Plaintiff has extensive experience in banking law, regulatory compliance,
Anti-Money Laundering ("AML") and Bank Secrecy Act ("BSA") issues in
global, large, and mid-size financial institutions.

10.    On November 9, 2018, Plaintiff applied for employment with Defendant
for an open Fraud Operations Manager ("FOM") position.

11.    Plaintiff initially interviewed for the position on December 11, 2018.

12.    Plaintiff was also interviewed on December 18-19, 2018.

13.    On December 21, 2018, Defendant offered Plaintiff the FOM position.

14.    After further negotiation, Plaintiff was hired on December 31, 2018.

15.    Upon commencing employment as FOM, Plaintiff reported to Reno

Matthews ("Matthews").

16.   On March 11, 2019, without any prior discussion, Matthews created an organization chart and presented that chart to his direct reports.  The chart represented that Plaintiff was employed as "Fraud Operations Lead" and not as FOM.

17.   Plaintiff privately expressed concern to Defendant's Human Resource Manager, Jalyn Isley, regarding the appearance of a demotion. Plaintiff specifically requested Isley to keep their conversation confidential.

18.   Isley spoke with Matthews and disregarded Plaintiff's request for confidentiality.

19.   On March 12, 2019, Plaintiff met with Matthews by video conference call. Matthews was irate that Plaintiff had reported his change of Plaintiff's FOM title to Isley.

20.   On March 14, 2019, Plaintiff launched Defendant's Fraud Operations department.  In this department, Plaintiff supervised various employees.

21.   On March 25, 2019, Matthews informed Plaintiff that he had selected her to receive a 90-day performance review.

22.   As of March 25, 2019, Matthews knew he was scheduled to meet with Isley on March 27, 2019 regarding Plaintiff's concerns expressed to Isley on March 11, 2019.

23.  After Matthews met with Isley on March 27, 2019, Matthews set up a meeting with Plaintiff for March 28, 2019 in which he warned Plaintiff not to piss him off as her supervisor based on the fact that he would be evaluating her performance in the next 90 days.

24.  On March 29, 2019, Plaintiff expressed concern to Isley regarding Matthews' warning.

25.  On May 9, 2019, at a scheduled meeting, Plaintiff met privately with HR employee, Alejandra Mendoza, and Matthews.

26.  During the meeting, in Matthews' presence, Mendoza informed Plaintiff that a business partner, Sutton Bank, had expressed concern to Defendant about Plaintiff.  According to Mendoza, Sutton Bank reported that Plaintiff had been involved in a physical altercation while Plaintiff was employed with a previous employer in which she had to be escorted away by the police.

27.  After informing Mendoza that the information was untrue, Plaintiff called her attorney who was representing Plaintiff in connection with a former employer of Plaintiff against whom Plaintiff had filed a pending EEOC charge.

28.  After a private discussion with her counsel, Plaintiff informed Mendoza that the false report may have been motivated by her pending EEOC

charge.

29.    Later on that day, Matthews informed Plaintiff that it wanted to fingerprint Plaintiff and conduct a further background investigation.

30.    On May 19, 2019, Matthews berated Plaintiff by video conference and indicated that Key leaders in the company called her incapable and incompetent after Plaintiff suspended a communication stream until the Fraud Operations team was up to full speed.

31.    On June 7, 2019, Plaintiff was invited and had booked travel to San Francisco to participate in a company meeting to be attended key stakeholders employed by Defendant.

32.    On June 10, 2019, Plaintiff was informed by Matthews that he had not been invited to attend the meeting.

33.    On June 11, 2019, Matthews encouraged Plaintiff to avoid the meeting and she cancelled her travel.

34.    Later that same day, Defendant's chief compliance officer, John Castelli, indicated to Plaintiff that the scheduled San Francisco meeting was a great opportunity for Plaintiff and she should attend.

35.    Plaintiff agreed with Castelli and re-booked her travel.  The meeting took place as scheduled on June 13-15, 2019.

36.    On June 15, 2019, Plaintiff returned to Florida.

37.    On June 17, 2019, Matthews advised Plaintiff he was going to conduct Plaintiff's performance review in person in Florida.  The review was past due.

38.    Matthews rated Plaintiff as "Meets Expectations" in the review and projected Plaintiff as his eventual replacement.  Matthews indicated that he was required to say some negative things about Plaintiff.  Matthews refused to allow Plaintiff to see or read the review because it was untimely.

39.    On June 25, 2019, Mendoza informed Plaintiff that Defendant was taking "no further action" with regard to the concerns expressed by Sutton Bank.

40.    On June 28, 2019, Plaintiff was informed that she was discharged from employment by Matthews.

## COUNT III - RACE DISCRIMINATION IN VIOLATION OF TITLE VII, SECTION 1981 AND THE FCRA

41.    Plaintiff realleges the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

44.    Plaintiff was in a protected group at all times material to this action.

45.    Plaintiff was discriminated against with regard to her title, compensation and other terms and conditions of employment and was ultimately terminated because of her race.

46.     Defendant's purported reason for Plaintiff's discharge was a mere pretext
        for race discrimination.

47.     Plaintiff has been damaged by the conduct of Defendant.

        WHEREFORE, Plaintiff requests this Honorable Court to:

        A.      Grant a judgment requiring Defendant to pay to Plaintiff
                back-pay found to be due and owing at the time of trial,
                compensatory damages proven at trial; punitive damages; and
                prejudgment interest thereon;

        B.      Award Plaintiff front-pay; and

        C.      Grant Plaintiff costs and an award of reasonable attorney's
                fees under  Title VII, 42 U.S.C. § 1988 and the FCRA.

## COUNT II - RETALIATION IN VIOLATION OF TITLE VII AND THE FCRA

48.     Plaintiff realleges the allegations contained in paragraphs 1 through 40
        as if fully set forth herein.

49.     Plaintiff engaged in protected opposition and participation activity,
        including the filing of a then-pending charge of discrimination, against a
        prior employer.

50.     Defendant learned of the charge of discrimination on May 9, 2019 and
        retaliated against Plaintiff by discharging her from employment.

51.     Prior to discharge, Defendant manifested retaliatory animus by re-opening

its background investigation, failing to timely evaluate Plaintiff's performance, and failing to allow Plaintiff to review her performance review.

52.   Defendant's purported reason for Plaintiff's discharge was a mere pretext for retaliation.

53.   Plaintiff has been damaged by the conduct of Defendant.

WHEREFORE, Plaintiff requests this Honorable Court to:

A.   Grant a judgment requiring Defendant to pay to Plaintiff back-pay found to be due and owing at the time of trial, compensatory damages proven at trial; punitive damages and prejudgment interest thereon;

B.   Award Plaintiff front-pay; and

C.   Grant Plaintiff costs and an award of reasonable attorney's fees under  Title VII and the FCRA.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury as to all issues so triable.


Respectfully submitted,

BERMAN LAW FIRM, P.A.

By:    */s/ Craig L. Berman*
       Craig L. Berman, Esquire
       BERMAN LAW FIRM, P.A.
       Fla. Bar No. 068977
       111 Second Ave. N.E.; Suite 706
       St. Petersburg, FL 33701
       Phone: (727) 550-8989
       Fax: (727) 894-6251
       craig@bermanlawpa.com

       **ATTORNEY FOR PLAINTIFF**